Harold Baer, J.
This was a suit for personal injuries brought against all the defendants. The New York City Housing-Authority, hereafter referred to as the Authority, has cross-claimed against both of the other defendants. The jury awarded $102,000 to the infant plaintiff and $17,500 to his mother against the Authority and E. C. Youngdahl Co., Psaty and Fuhrman, Inc. They found in favor of the defendant Essential Demolition Co. The action was discontinued against the City of New York during trial.
The jury unanimously decided the questions of fact with respect to liability and damages. I will not disturb that verdict as in my opinion it was not against the weight of the credible evidence nor was it excessive in view of the permanent injury to a young child.
There were no objections to the charge by the plaintiff or by the defendant Authority. The one exception by the other defendants was with respect to their obligation to keep the public streets within the project area free from debris for the safety of the passing public. This question becomes academic in view of the verdict in favor of the defendant Essential and the contractual obligations of the defendant Youngdahl to the Authority.
Therefore, all motions made at the end of the case with respect to the verdict, by the plaintiff and defendants are denied.
Cross complaints by the Authority against each of the other defendants are unresolved. These were not submitted to the jury but were left to the court to decide as matters of law.
*600 The Authority’s contracts with both defendants contain broad indemnification clauses. The Youngdahl contract provides:
1 ‘ Article V, Section 17 Risks Assumed by the Contractor
“ (a) Generally. The Contractor shall be the insurer of the Authority, * * * and hold them harmless against the following distinct and several risks, whether they arise from acts or omissions of the Contractor, of any Sub-Contractor, of any other contractor, of any governmental agency, of the Authority, * * * or any other casualty or happening, or otherwise:
“ (3) The risks of bodily injuries or death, * * * suffered or alleged to have been suffered on or off the site of the Project, either before or after Final Payment, and in any way arising, occurring, or alleged to have arisen or occurred, by reason of, or as a result of the performance of the Work of the Contract. Such risks shall include all liability of the Authority, * * * whether or not an active primary duty as provided by law is imposed upon the Authority, for and upon losses suffered or alleged to have been suffered by, and claims and demands (just and unjust), made by, third persons or other contractors, * * * whether based * * * upon negligence, violation of statutory duty, primary or otherwise, or any other duty, or other fault, * * * of the Authority, * * *. The Contractor shall indemnify the Authority, * * * and shall save them harmless from, any and all of such risks.”
This contract, in clear and unequivocal terms, indemnifies the New York City Housing Authority (Thompson-Starrett Co. v. Otis Elevator Co., 271 N. Y. 36). Similar indemnification agreements have been upheld, though they indemnified the indemnitee against its own act of negligence and where the indemnitee was found to have violated a primary nondelegable duty (Burke v. City of New York, 2 N Y 2d 90; Jordan v. City of New York, 3 A D 2d 507; Fuller Co. v. Fischbach & Moore, 7 A D 2d 33, 35; Stellato v. Flagler Park Estates, 11 Misc 2d 413, affd. 6 A D 2d 843; Ellis v. George A. Fuller Co., 182 N. Y. S. 2d 594).
It has been held that such indemnification agreements are not illegal or void as against public policy (Fuller Co. v. Fischbach & Moore, supra, p. 36). Defendant Youngdahl’s contention that section 235 of the Real Property Law renders this indemnification agreement void as against public policy is clearly untenable. That section is inapplicable here.
Youngdahl assumed the care of all sidewalks and streets within the project area for the protection of the public under *601 article III (§ 14, subd. [a]) of the general conditions of the contract. The project included within its boundaries 101st Street between Amsterdam and Manhattan Avenues where this accident occurred. The' Authority owned and controlled this area. It would appear that apart from the explicit language of indemnity found in the contract (art. V, § 17, subd. [a], par. [3]), Youngdahl’s agreement to maintain the sidewalks and streets carried with it an obligation to indemnify the New York City Housing Authority (see Burke v. City of New York, supra, pp. 93-94). However, since the indemnification provisions are sufficient to hold Youngdahl liable over to the Authority, the question of whether it is also liable under the agreement to maintain the sidewalks and streets is academic.
The contract of the defendant Essential also contains broad language of indemnification.
“ Section XII. Risks Assumed by the Contractor.
‘ ‘ The Contractor shall be the - insurer of the Authority * 8 * and hold them harmless against the following distinct and several risks, whether they arise from acts or omissions of the Contractor, of any Sub-Contractor, of the Authority, * * * excepting only those risks which result solely from the affirmative, willful acts done by the Authority subsequent to the acceptance of the Contractor’s Proposal: 888 “ (c) The risk of liability or losses suffered by or claims and demands, 8 * 8 made by third persons, whether made before or after Final payment, against the Authority, * 8 8 arising or alleged to arise out of the performance of the Work, on account of bodily injuries or death 8 * 8 suffered or alleged to have been suffered. ’ ’
Standing alone, the indemnification agreement appears to sustain the cross complaint. However, the facts implicit in the findings of the jury compel me to reach another, conclusion. The jury was instructed, without exception, as follows: “ Similarly with the defendant Essential. If you find that they performed their contract in a reasonably good and workmanlike manner and were told not to remove the slab of stone with which we are concerned, and they were so told by the New York City Housing Authority, or that the stone was not a part of the demolished building, but belonged at least partially to the school building, your verdict may be for the defendant Essential.”
It must be assumed that the jury found that the stone slab upon which this plaintiff was injured was not part of the demolished building or, more likely, believed the uncontroverted testimony of the defendant Essental’s superintendent, when he *602 testified that the Authority instructed him not to remove this slab of stone.
This state of facts takes Essential outside of the rule of law applicable in those cases relied upon and cited above. Words in a contract are to be construed in the light of the ‘1 apparent object of the parties ” (Gillett v. Bank of America, 160 N. Y. 549, 555). They should be restrained to the particular occasion and to the particular object which the parties had in view (Robertson v. Ongley Elec. Co., 146 N. Y. 20, 23).
This contract contemplated indemnification for injuries to persons, ‘1 arising out of or in connection with the performance of the work ’ ’. It did not contemplate indemnification for injuries to third parties resulting six months after satisfactory completion of the job, particularly where the Authority instructed Essential not to remove the very slab of stone which caused the accident (see Inman v. Binghamton Housing Auth., 3 N Y 2d 137).
The cross complaint of the Authority against Essential is dismissed. The cross complaint against E. 0. Youngdahl Co., Psaty & Fuhrman, Inc., is sustained and the Authority may have judgment over against them.