■ DONALD REDDING, Plaintiff, v. GULF OIL CORPORATION, Defendant and Third-Party Plaintiff and Fourth-Party Plaintiff-Appellant. WESTERN MANUFACTURING COMPANY, Third-Party Defendant; DONALD REDDING, Fourth-Party Defendant-Respondent. (Action No. 1.) (And Another Action) — Appeal by the fourth-party plaintiff, Gulf Oil Corporation, from an order of the Supreme Court, Nassau County, dated September 13, 1971, which granted the fourth-party defendant's motion to dismiss the fourth-party complaint on the ground that it fails to state a cause of action. Order affirmed, with $10 costs and disbursements. This is an action to recover damages for personal injuries sustained by Ronald Redding, the lessee and operator of a gasoline service station, through the alleged negligence of the lessor, Gulf Oil Corporation. Redding was injured when a hydraulic lift on the demised premises broke, causing an automobile then on the lift to roll off and strike him.

The gravamen of the action is the negligence of Gulf in installing and maintaining the lift. On the eve of trial, Gulf brought the fourth-party action against Redding, alleging that, if it were held to respond in damages to him, then he would be obliged to indemnify it by virtue of the following provision in the lease: "Lessee agrees to exonerate, save harmless, protect and indemnify Lessor from any and all losses, damages, claims, suits or actions, judgments and costs which may arise or grow out of any injury to or death of any person or persons or damage to any property caused by or in any manner connected with the use, possession, repair or condition of said premises or any equipment or fixtures thereon." Redding moved to dismiss the fourth-party complaint upon the ground that the indemnity agreement was unenforceable and void because it violated section 5–321 of the General Obligations Law. Without reaching the question of the validity of the indemnity agreement under this enactment, Special Term dismissed the fourth-party complaint upon the ground that the indemnity provision was equivocal in not indicating a clear intention to require Redding to indemnify Gulf for injury to himself. We agree. The case at bar differs from the usual situation where the courts have examined an indemnity clause with a view towards determining whether it covered injuries due to the active negligence of the lessor (cf. *Thompson-Starrett Co.* v. *Otis Elevator Co.,* 271 N. Y. 36; *Kurek* v. *Port Chester Housing Auth.,* 18 N Y 2d 450; *Levine* v. *Shell Oil Co.,* 28 N Y 2d 205). The question here is whether the clause covers injury to the lessee himself when it states: "Lessee agrees to exonerate * * * Lessor from any and all losses * * * to * * * any person". We would be constrained to hold that the term "any person" includes Redding were it not for the first paragraph of the lease which provides that the parties shall be known as "Lessor" and "Lessee" in the remaining terms thereof. An indemnity clause must reflect the unmistakable intent of the parties as to the scope of its coverage (*Levine* v. *Shell Oil Co., supra,* p. 212). Here, the clause is susceptible of two interpretations. Within the context of this first paragraph of the lease, the phrase "any person" can, with equal reason, be read as covering or not covering an injury to the lessee himself. This ambiguity is fatal. But even if we were to accept the contention, urged by Gulf, that the words "any person" include the lessee, we would affirm. If such were the case, the indemnity clause would indeed be violative of section 5–321 of the General Obligations Law, which prohibits any agreement in connection with a lease of real property that exempts the lessor from liability for injuries caused by the lessor's negligence. Under this statute, Gulf could not lawfully have inserted a clause in its contract with Redding which provided that no cause of action would lie against it for injury to Redding himself. Gulf cannot choose a circuitous method to do indirectly what it cannot accomplish directly. It cannot expose itself to liability to the lessee, yet require that if liability be proved the lessee must repay any recovery under the terms of an indemnity clause in the lease. We therefore hold that, insofar as this indemnity provision may be construed as applying to an injury sustained *by the lessee himself,* it is, in effect, an agreement exempting the lessor from liability for its own negligence and at least to that extent it is contrary to public policy and void under section 5–321 of the General Obligations Law (*Bullock* v. *Sinclair Refining Co.,* 164 N. Y. S. 2d 452; cf. *Bandbox Sportswear* v. *Fashion Wear Realty Co.,* 33 A D 2d 537; *Goodman* v. *Imperion Manor,* 62 Misc 2d 561, affd. 64 Misc 2d 813; *Lustig* v. *Congregation B'Nai Israel,* 65 Misc 2d 1052). We do not believe that the recent holding of the Court of Appeals in *Levine* v. *Shell Oil Co.* (28 N Y 2d 205, *supra*) requires a different result. In *Levine,* the court dealt with the inter-

pretation of an indemnity agreement almost identical to the one in the case at bar, but the question of its validity under section 5–321 was not raised or litigated. At most, *Levine* stands for the proposition that, where a third party sues the landlord oil company for its active negligence, the tenant station operator may be required to respond under the indemnification clause. At bar, the question of the agreement's validity under the statute is squarely raised and it was the lessee himself, not a third person, who was injured. Hence, we deem *Levine* distinguishable and not controlling. Munder, Acting P. J., Martuscello, Gulotta, Brennan and Benjamin, JJ., concur. [67 Misc 2d 464.]