NEW YORK TELEPHONE COMPANY et al., Appellants-Respondents, v MOBIL OIL CORPORATION, Respondent-Appellant, and TRI-BRIDGE SERVICE STATION, INC., et al., Respondents. (And a Third-Party Action.)

First Department, February 21, 1984

186

APPEARANCES OF COUNSEL

*Lewis Trippett* of counsel (*Raymond F. Burke,* attorney), for appellants-respondents.

*Murray M. Weinstein* for Manreb Assoc., Inc., respondent.

*Daniel Wotman* of counsel (*Jerome Kowalski* with him on the brief; *Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey,* attorneys), for respondent-appellant.

### OPINION OF THE COURT

FEIN, J.

The complaint in this action, commenced in September, 1981, alleges in two causes of action that in October, 1961 defendant Manreb Assoc., Inc. (Manreb), was the owner of premises 2485 Second Avenue, New York, New York, at which it operated a retail gasoline service station; Manreb had an agreement with Mobil Oil Corporation (Mobil) to supply gasoline to Manreb for resale at the premises; in October, 1961, Mobil and Manreb caused to be installed at the premises 12 underground gasoline tanks and abandoned 10 existing underground gasoline tanks, which they control. It is further alleged that the tanks were negligently, carelessly and recklessly installed and maintained and that the abandoned tanks were not adequately and properly closed and sealed and that they continuously discharged and released gasoline onto the subsurface of the premises and into plaintiffs' underground facilities on a steady, regular basis from the time of initial installation up until and past September 15, 1978 and that by reason thereof the property of the plaintiffs was flooded and considerably damaged.

The complaint further alleges that the gasoline station is presently operated by defendant Gene Ramerez, doing business as Tri-Bridge Mobil Service Station (Ramerez), and that prior to and since September 15, 1978, Mobil supplied and continues to supply Ramerez with gasoline for resale to the public.

The first cause of action against Mobil and Manreb alleges that the wrongful maintenance of the underground gasoline tanks created a nuisance.

The second cause of action against the present lessee-operator of the Mobil station, as well as Mobil, the gasoline supplier, alleges that their negligence in failing to maintain the gasoline tanks in a safe condition free from leakage caused plaintiffs to sustain damage to their property.

Manreb moved to dismiss the complaint pursuant to CPLR 3211 (subd [a], par 5) on the ground that the action was barred by the three-year Statute of Limitations applicable to property damage actions (CPLR 214, subd 4).

Manreb's motion was premised upon undisputed evidence that, pursuant to condemnation of the property by eminent domain in December, 1969, title was transferred from Manreb to the City of New York (City), which thereafter, in or about 1971, leased the gas station to the present operator. The issue is whether divestiture of Manreb's ownership and leasehold rights in 1969 rendered it immune from liability for the property damage sustained in 1978.

Mobil moved to dismiss the complaint as against it pursuant to CPLR 3211 (subd [a], pars 1, 5, 7) in that documentary evidence establishes plaintiffs' claim is time barred and fails to state a cause of action.

Mobil and Manreb cross-claimed against each other for indemnity. Mobil moved to dismiss the cross claim of Manreb.

■ Special Term properly dismissed the complaint as against Manreb, as well as Mobil's cross claim, ruling that the action for property damage against Manreb was barred by the three-year Statute of Limitations (CPLR 214, subd 4) since the complaint alleges that Manreb owned the premises until 1974 and the action was begun in 1981.

Moreover, the undisputed documentary evidence establishes that Manreb's title to the property was divested by eminent domain in 1969.

Special Term should have dismissed the first cause of action against Mobil for the same reasons.

Plaintiffs assert that a cause of action for nuisance and continuing trespass is stated so that the three-year Statute of Limitations is not a bar even though the original negligent acts of the defendants may have occurred more than three years prior to commencement of the action. They argue that the leaking gasoline constitutes a nuisance and continuous trespass giving rise to a cause of action as long as the trespass or nuisance continues. This is premised upon the principle of continuous trespass where a new cause of action accrues upon the date of the injury or any new injury (*509 Sixth Ave. Corp. v New York City Tr. Auth.*, 15 NY2d 48; *Galway v Metropolitan El. Ry. Co.*, 128 NY 132; *Rahabi v Morrison*, 81 AD2d 434). They also rely upon the principle stated in *Schmidt v Merchants Desp. Transp. Co.* (270 NY 287, 300, mots for rearg den 271 NY 531): "Through lack of care a person may set in motion forces which touch the person or property of another only after a long interval of time (cf. *Ehret* v. *Village of Scarsdale*, 269 N.Y. 198); and then only through new, fortuitous conditions. There can be no doubt that a cause of action accrues only when the forces wrongfully put in motion produce injury. Otherwise, in extreme cases, a cause of action might be barred before liability arose."

To the same effect are *Durant v Grange Silo Co.* (12 AD2d 694) and *Queensbury Union Free School Dist. v Walter Corp.* (82 AD2d 204, app dsmd 55 NY2d 745).

However, the principle of these cases is of no avail here because defendants Mobil and Manreb did not maintain exclusive use and enjoyment of the property beyond 1971 at the latest, after the property was condemned by the City and leased to nonmoving defendant Ramerez. The owner of land ceases to be liable in negligence for its dangerous condition when the ownership of the premises or possession and control pass to another before the injury is sustained. Even where a continuing trespass or nuisance exists, liability of the owner terminates after the conveyance at such

time as the new owner has had a reasonable opportunity to discover the condition by making prompt inspection and necessary repairs (*Pharm v Lituchy,* 283 NY 130, 132; *Rufo v South Brooklyn Sav. Bank,* 268 App Div 1057). The Restatement of Torts, Second (§§ 351-354, and Comments with respect thereto) is in accord. Section 354 of the Restatement emphasizes the application of the principle where the transfer of ownership has been by eminent domain.

Section 352 of the Restatement provides: "Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession."

Comment *a* to section 352 provides in pertinent part: "The vendee is required to make his own inspection of the premises, and the vendor is not responsible to him for their defective condition, existing at the time of transfer."

Section 353 of the Restatement makes the vendor liable only where he conceals or fails to disclose a dangerous condition known to him. There is no such allegation here.

Plainly the involuntary transfer of ownership of the premises, together with the offending tanks, to the City, which in turn released the premises to Ramerez, discharged both Mobil and Manreb from liability for any negligence, nuisance or trespass that may have existed. A period of time far in excess of the three-year Statute of Limitations expired before the 1978 incident. The City has had ownership and Ramerez has had operation, possession and control for more than nine years, with ample opportunity to discover the condition and make the necessary repairs. The fact that the alleged damage occurred in 1978 does not give rise to a cause of action against either Mobil or Manreb who were out of ownership since 1969.

As noted by subdivision (1) of section 354 of the Restatement of Torts, Second: "The rules stated in §§ 351 and 352 apply to any former owner of land whose ownership and possession have been transferred otherwise than by sale."

Comment *a* to subdivision (1) of section 354 provides: "The rule stated in Subsection (1) applies to any transfer of

the ownership and possession of land \* \* \* by \* \* \* taking by the state under eminent domain".

Section 353 of the Restatement, entitled "Undisclosed Dangerous Conditions Known to Vendor", is inapplicable to the present case since the City of New York acquired the property by condemnation. Subdivision (2) of section 354 provides in relevant part: "(2) The rule stated in § 353 applies to any former owner of land who has *voluntarily* transferred the ownership and possession inter vivos." (Emphasis supplied.)

Comment *b* to section 354 explains this limitation as follows: "The rule stated in Subsection (2) \* \* \* does not apply where the transfer is without voluntary action on the part of the transferor, as in the case of \* \* \* eminent domain \* \* \* *In such cases the element of voluntary affirmative action in making the transfer, and implied misrepresentation of the condition of the land by failure to disclose the dangers, which is the essential basis for the rule stated in § 353, is lacking.*" (Emphasis added.)

The City of New York, and Ramerez as the new lessee, had a reasonable opportunity to discover the alleged defect and to make the appropriate repairs. The City owned and Ramerez leased the premises for approximately nine years before the alleged damage occurred. Applying the three-year Statute of Limitations, six years is more than sufficient time to discover the defect and make necessary repairs. Moreover, Mobil has submitted fire department inspection reports and an affidavit to the effect that as late as May, 1977 there were no defects in the tanks.

Accordingly, the first cause of action against Manreb was properly dismissed and the same cause of action against Mobil should have been dismissed.

■ Special Term properly denied Mobil's motion to dismiss the second cause of action which in substance alleges that Mobil, as supplier of gasoline to the service station since 1971, failed to maintain, inspect, test or otherwise monitor the tanks despite the fact that it knew or should have known that there was an underground loss of gasoline occasioned by leakage and that the tanks were discharging large quantities of gasoline onto plaintiffs' property causing the damage in 1978. Liability may ensue if

Mobil had notice, actual or constructive, of the alleged dangerous condition of the tanks and did nothing to prevent the injury, or if the dangerous condition was created by Mobil, in the manner either in which it maintained the tanks or in which it loaded or filled them as alleged.

The hold harmless clause in the agreement between Mobil and Ramerez, upon which Mobil relies, may well provide a basis for a claim by Mobil against Ramerez. The clause does not discharge Mobil's obligation to others such as plaintiffs (*Levine v Shell Oil Co.*, 28 NY2d 205; *Redding v Gulf Oil Corp.*, 38 AD2d 850). It could not exculpate Mobil from liability if it filled the tanks with gasoline, with actual or constructive notice that they leaked.

The dissent relies upon two cases to exculpate Mobil from the liability asserted in the second cause of action. Both cases are distinguishable. Both are appeals from judgments after trial on the basis of full factual records. We deal here with a motion addressed to the complaint. In *B.L.W. Realty Holding Co. v Socony Mobil Oil Co.* (32 AD2d 312), the majority opinion for this court, reversing a judgment against Mobil, the gasoline supplier, in favor of the landlord of the premises whose property had been damaged in a fire occasioned by a leakage of gasoline, stated (32 AD2d, at p 314): "Whoever or whatever was responsible for the original creation of the incipiently dangerous condition, it was not Mobil, and any liability by Mobil could derive only from its negligent act or omission to act in response to notice of existence of the leak".

In our case, the second cause of action, by incorporating the allegations of the first cause of action, alleges Mobil installed and maintained the tanks alleged to have leaked. Moreover, in *B.L.W. Realty Holding Co.*, the issue turned on facts not shown to exist here. The court stated (32 AD2d, at p 315): "Indeed, it appears that the affirmative causative negligence was that of the garage operator. Instructed by Mobil to shut off the pump and not use it, and also bound by the contract so to do, the operator did not keep it guarded or marked against use."

It is notable that the dissenters in that case concluded that despite this fact the judgment against Mobil should

have been sustained. That case is not authority for dismissing the complaint in this action.

*Nodine v Terpening Trucking Co.* (64 AD2d 808) likewise deals with a judgment after trial in which it was found that although there was "a duty to the plaintiffs to exercise care in the delivery of gasoline into the underground tanks of plaintiffs' service station, that duty did not extend to the unforeseeable consequence that gasoline would overflow through unused fill pipes".

Unlike our case, there was apparently no allegation or evidence that defendants installed or maintained the pipes. On the basis of the record "devoid of any reason for the spillage", and lacking "evidence which would support a conclusion that defendants' employee was or reasonably should have been aware that such spillage would occur", there was no basis for liability.

Here there is no such record. There is only a complaint which alleges that Mobil installed and maintained the underground tanks alleged to have caused the leakage.

On the face of the current complaint, evidence that Mobil delivered gasoline into the tanks which it knew or should have known were defective would be admissible and would sustain liability.

On a motion to dismiss a complaint for failure to state a cause of action or upon the ground of the Statute of Limitations or upon the basis of documentary evidence, the court is required to accept as true the allegations of the complaint since the motion is addressed to the pleadings (CPLR 3211, subd [a], pars 1, 5, 7; *Rovello v Orofino Realty Co.*, 40 NY2d 633). The court was not obliged to deem the motion as one for summary judgment because Mobil annexed to its motion papers reports of inspection by the fire department purporting to show that there was no leak as late as May, 1977. In the first place, such reports are merely opinion evidence. It is doubtful that they constitute documentary evidence of the type required to support dismissal (CPLR 3211, subd [a], par 1; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:10, p 15). On their face these reports are not self-proving. At best for Mobil they show only that on five dates spread over several years up to May, 1977 City

inspectors performed unspecified and unidentified tests on some of the tanks and made no report of any leakage.

Moreover even if such reports call in question the truthfulness of the pleaded allegations (*Rappaport v International Playtex Corp.*, 43 AD2d 393), they are insufficient to require dismissal, if, as alleged, the leakage continued up to and through September, 1978, when the damage to plaintiffs' property allegedly occurred.

The second cause of action against Mobil is sufficient.

The order, Supreme Court, New York County (MORRIS GOLDMAN, J.), entered May 19, 1982 granting the motion of defendant Manreb dismissing the complaint against it and denying the motion of defendant Mobil to dismiss the complaint against it should be modified on the law, to grant Mobil's motion only to the extent of dismissing the first cause of action against Mobil and otherwise affirmed, without costs.

MURPHY, P. J. (dissenting in part). I agree that the first cause of action should be dismissed against both Mobil and Manreb. I would also dismiss the second cause against Mobil.

In the second cause, plaintiffs attempt to predicate liability against Mobil in its role as a gasoline supplier to the Ramerez station. The chief thrust of the second cause is found in paragraphs 33, 34 and 35 of the complaint:

"33. Prior to September 15, 1978 MOBIL, RAMEREZ and TRI-BRIDGE SERVICE STATION, INC. negligently and carelessly failed to maintain the underground gasoline tanks and equipment at the premises so as to prevent underground discharge of gasoline.

"34. Prior to September 15, 1978 MOBIL, RAMEREZ and TRI-BRIDGE SERVICE STATION, INC. failed to inspect, test or otherwise monitor the underground loss of gasoline from the tanks and other equipment at the premises.

"35. Prior to September 15, 1978 MOBIL, RAMEREZ and TRI-BRIDGE SERVICE STATION, INC. knew or should have known that the underground tanks and other equipment were leaking and discharging large quantities of gasoline the [*sic*] premises and yet failed to take any steps to prevent such leakage and discharge and failed to take any

steps to prevent or minimize the damage to plaintiffs' underground property and equipment."

The narrow question presented with regard to the second cause is whether Mobil, as a supplier of gasoline, owed to plaintiffs any of the duties set forth in paragraphs 33, 34 and 35 of the complaint (41 NY Jur, Negligence, § 7, p 13). The plaintiffs do not cite any authority to support their contention that Mobil was obligated to undertake those duties. The majority opinion does cite two cases (*Levine v Shell Oil Co.*, 28 NY2d 205; *Redding v Gulf Oil Corp.*, 38 AD2d 850) for the proposition that the indemnification clause in the "retail dealer contract" does not exculpate Mobil from possible liability in negligence to third parties. While no dispute is taken with that proposition, the two cases cited are clearly distinguishable from the present appeal.

In *Levine* and *Redding* (*supra*), Shell and Gulf were the lessors of the service stations. In that status, they had the respective duties of (i) repairing the gas heater and (ii) maintaining the hydraulic lift. They were held responsible upon their failure to do so. In this proceeding, the City is the lessor; Ramerez is the lessee. Mobil is merely the supplier of gasoline for the premises. There is no allegation in the complaint that Mobil was being paid a premium to maintain or monitor the underground tanks. There is no allegation that Mobil explicitly or implicitly contracted to perform those duties. It is unreasonable for plaintiffs to expect that Mobil should gratuitously undertake those responsibilities with relation to every underground tank that it fills.

There are two cases that strongly support Mobil's motion for dismissal of the second cause. The first is *B.L.W. Realty Holding Co. v Socony Mobil Oil Co.* (32 AD2d 312, affd in part, affd dsmd in part 26 NY2d 1002). The plaintiff there, the owner of a garage building, sued (i) the lessee, the operator of the garage, and (ii) Mobil, the supplier of gasoline for damages caused by fire. The garage operator's manager had informed Mobil's repair service of a leak in an apparatus which did not belong to Mobil. An employee of the garage operator was later instructed by Mobil's repair manager to keep the pump closed until Mobil's

mechanic arrived the following day. However, Mobil's repair manager did not inform his company's delivery department of the problem. Mobil's delivery driver, unaware of the problem, delivered a load of gasoline before the pump was fixed. A fire was caused by the gasoline leakage.

The garage operator was found solely liable for its failure to shut down the system prior to the delivery. Mobil was absolved of all liability. This department, in the opinion of Justice MARKEWICH, stressed that Mobil, as a supplier, owed no duty to the building owner other than to refrain from affirmative negligence. (*B.L.W. Realty Holding Co. v Socony Mobil Oil Co.*, 32 AD2d, at p 314.) From that statement of the law in *B.L.W.*, it reasonably follows that Mobil, in this case, had no duty to search for or to fix latent defects in the Ramerez tanks. Plaintiffs could recover against Mobil if, for example, Mobil's driver had negligently spilled gasoline on Ramerez' property and the gasoline eventually seeped into plaintiffs' underground facilities. That would be an affirmative act of negligence on Mobil's part.

Additional support for the dismissal of the second cause as against Mobil is found in *Nodine v Terpening Trucking Co.* (64 AD2d 808). The Fourth Department's memorandum is succinct and reads as follows: "The trial court properly dismissed the action at the close of plaintiffs' case. While the defendants owed a duty to the plaintiffs to exercise care in the delivery of gasoline into the underground tanks of plaintiffs' service station, that duty did not extend to the unforeseeable consequence that gasoline would overflow through unused fill pipes which were located some distance away from the point where the delivery of the gasoline into the tanks was then being made through fill pipes designed for that purpose (*Palsgraf v Long Is. R. R. Co.*, 248 NY 339, reh den 249 NY 511; cf. *Pulka v Edelman*, 40 NY2d 781, 785). The record is devoid of any reason for the spillage and contains no evidence which would support a conclusion that defendants' employee was or reasonably should have been aware that such spillage would occur."

The Fourth Department stressed that the supplier was required to use ordinary care in the delivery of the gaso-

line. The supplier was not saddled with the extraordinary duty of discovering unforeseen consequences that might arise from a gasoline delivery. Similarly, Mobil should not be charged with any obligation to search for and repair hidden defects in the tanks. I would dismiss the second cause at this pleading stage instead of waiting for trial as was done in *Nodine* (*supra*).

For the reasons stated, the second cause should be dismissed as against Mobil.

ASCH, MILONAS and KASSAL, JJ., concur with FEIN, J.; MURPHY, P. J., dissents in part in an opinion.

Order, Supreme Court, New York County, entered on May 19, 1982, modified, on the law, to grant Mobil's motion to dismiss the complaint as against it only to the extent of dismissing the first cause of action against Mobil and otherwise affirmed, without costs and without disbursements.