# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**14**

**CA 12-01422**

PRESENT: SCUDDER, P.J., CENTRA, CARNI, LINDLEY, AND SCONIERS, JJ.

---

THOMAS M. SULLIVAN, PLAINTIFF-RESPONDENT,

V                                                    MEMORANDUM AND ORDER

TROSER MANAGEMENT, INC., DEFENDANT-APPELLANT.

---

KAMAN, BERLOVE, MARAFIOTI, JACOBSTEIN & GOLDMAN, LLP, ROCHESTER
(RICHARD GLEN CURTIS OF COUNSEL), FOR DEFENDANT-APPELLANT.

WOODS OVIATT GILMAN LLP, ROCHESTER (WARREN B. ROSENBAUM OF COUNSEL),
FOR PLAINTIFF-RESPONDENT.

-----------------------------------------------------------------------------------------

Appeal from an amended order of the Supreme Court, Monroe County
(Kenneth R. Fisher, J.), entered November 17, 2011.  The amended
order, among other things, denied defendant's motion for summary
judgment.

It is hereby ORDERED that the amended order so appealed from is
unanimously modified on the law by vacating the determination that
defendant has exercised its option to purchase plaintiff's stock and
as modified the amended order is affirmed without costs.

Memorandum:  Defendant appeals from an amended order denying its
motion for summary judgment seeking a determination that plaintiff
must sell his shares of stock to defendant for $183,910, the value
determined by defendant's expert in accordance with the formula set
forth in *Lewis v Vladeck, Elias, Vladeck, Zimny & Engelhard* (57 NY2d
975).  Supreme Court also noted that the parties sought "clarification
as to whether defendant actually exercised its option to purchase
plaintiff's stock" under the terms of the parties' "buy-sell"
agreement (hereafter, buy-sell agreement), and the court determined
that defendant had in fact exercised that option.  For the reasons
that follow, we modify the amended order by vacating the determination
that defendant has exercised its option to purchase plaintiff's stock,
and we otherwise affirm.

Plaintiff commenced this action in 2003 seeking specific
performance of that part of an agreement entered into by the parties
in 1986 (hereafter, Agreement), contemporaneously with the buy-sell
agreement, providing that he would receive an 18% equity interest in
defendant, a closely held corporation, upon termination of the
Agreement on December 31, 1991.  The amended complaint also sought an
accounting, an inspection of defendant's books and records, a
determination that defendant is "required to repurchase" plaintiff's

shares of stock once the shares are issued to plaintiff, and a determination of the parties' rights under the buy-sell agreement. This Court has decided three prior appeals arising from this litigation (*Sullivan v Troser Mgt.*, *Inc.*, 75 AD3d 1059 [*Sullivan III*]; *Sullivan v Troser Mgt., Inc.*, 34 AD3d 1233 [*Sullivan II*]; *Sullivan v Troser Mgt., Inc.*, 15 AD3d 1011).

As a result of the prior appeals and the various orders of Supreme Court, it has been determined, inter alia, that plaintiff is entitled to 18% of defendant's stock pursuant to the Agreement; the "Purchase Price" of the stock cannot be determined pursuant to the buy-sell agreement because the stockholders, i.e., plaintiff and Daniel Fuller, never agreed upon a value for the shares, as required by paragraph 9 of the buy-sell agreement; and plaintiff is not entitled to a jury trial because the amended complaint sought equitable relief. In addition, in *Sullivan III* (75 AD3d at 1061), we concluded that the court erred in denying plaintiff's cross motion for partial summary judgment seeking an order determining that his shares in defendant " 'be valued on the basis of his percentage interest in Defendant's assets' in the event that defendant exercises its option to purchase his shares," and we therefore modified the order accordingly.

On this appeal, we conclude that the court properly denied defendant's motion for summary judgment directing plaintiff to sell his shares of stock to defendant at a price of $183,910. The court properly determined that our decision in *Sullivan III* did not mandate that plaintiff's stock be valued pursuant to the *Lewis* formula, which was the method advocated by plaintiff on the prior appeal in *Sullivan III* (*id.* at 1060), or by any other particular valuation method. As noted, this Court wrote in *Sullivan III* that plaintiff's cross motion was for "partial summary judgment seeking an order determining that his shares 'be valued on the basis of his percentage interest in Defendant's assets' in the event that defendant exercises its option to purchase his shares," as was the case in *Lewis*; no particular valuation method was specified (*id.* at 1061). Thus, contrary to defendant's contention, we did not determine that the value of plaintiff's shares should be determined pursuant to a net asset valuation, the valuation method approved but not mandated by the Court of Appeals in *Lewis* for shares of a law firm. It therefore follows that the court was not bound by the doctrine of law of the case or to apply *Lewis* in determining the value of plaintiff's stock (*see generally Town of Angelica v Smith*, 89 AD3d 1547, 1550), nor does the doctrine of judicial estoppel apply to prevent plaintiff from abandoning his prior endorsement of *Lewis* (*see Baje Realty Corp. v Cutler*, 32 AD3d 307, 310).

We further conclude that the court properly determined that defendant otherwise failed to meet its burden of establishing as a matter of law that its method for determining the value of plaintiff's stock is the only appropriate valuation method. Rather, while it was established in *Sullivan III* that plaintiff's shares must be valued " 'on the basis of his percentage interest' " in defendant's assets (*id.* at 1061), issues of fact remain with respect to the appropriate

method of valuing those assets.  Although plaintiff is not entitled to the "fair value" of the stock under Business Corporation Law § 1118 (b) because he does not own 20% of the outstanding shares and there is no evidence that defendant has engaged in "illegal, fraudulent or oppressive actions" toward plaintiff (§ 1104-a [a] [1]), it does not follow, as defendant suggests, that plaintiff is entitled only to book value.  As the Court of Appeals has stated, "[t]here is no uniform rule for valuing stock in closely held corporations.  'One tailored to the particular case must be found, and that can be done only after a discriminating consideration of all information bearing upon an enlightened prediction of the future' " (*Amodio v Amodio*, 70 NY2d 5, 7, quoting *Snyder's Estate v United States*, 285 F2d 857, 861).

We reject defendant's related contention that the buy-sell agreement dictates that book value be used to determine the purchase price of plaintiff's shares.  As plaintiff notes, the buy-sell agreement provides that, if the stockholders, i.e., plaintiff and Daniel Fuller, did not agree upon the value of the shares for a period of two years, the agreed upon value shall be *adjusted* by the increase or decrease in defendant's book value since the date of the last agreed upon value.  Here, as we held in *Sullivan III*, the parties never agreed upon the value of the shares, and we thus conclude that there was nothing to adjust and book value does not come into play.  Because defendant is not entitled to summary judgment on the issue of valuation, it shall be for the court to determine the appropriate valuation method based on the evidence at trial.

We agree with defendant, however, that the court erred in determining as a matter of law that it had exercised its option to purchase plaintiff's stock at a price to be determined by the court in the future.  Our ruling on this issue is based solely on our construction of the papers before the court.  As noted, the amended complaint sought, inter alia, a determination that defendant be "required to repurchase" plaintiff's shares of stock.  At no time has either party moved for summary judgment with respect to that request for relief.  Upon remittal following our decision in *Sullivan III*, defendant moved for summary judgment "directing that the plaintiff sell his shares of stock in the Defendant in accordance with the [*Lewis*] formula."  After the court issued a decision and order denying the motion, plaintiff's attorney wrote a letter to the court seeking clarification as to whether defendant is obligated to purchase the stock at the price to be determined by the court at trial.  Plaintiff noted that defendant had admitted that it exercised its option to purchase plaintiff's shares but that, in its opposition papers, "defendant suggests that [its] exercise of the option was somehow conditioned upon plaintiff selling his shares at a price that defendant finds acceptable."  After an exchange of letters to the court from counsel for both parties, the court issued the "amended decision and order" on appeal in which, as previously noted, the court wrote that the parties sought "post-argument clarification" on the issue whether defendant exercised its option to purchase the stock. The court found that defendant did so on July 14, 2005, when defendant's attorney sent a letter to opposing counsel stating that defendant elected to purchase the stock for $120,615 "in accordance

with the formula set forth in paragraph 9 of said Buy-Sell Agreement."

We conclude that an issue of this magnitude, relating directly to relief requested in the amended complaint, may not be determined as a matter of law in the absence of a motion for summary judgment or a trial.  It should not be determined as a result of an informal letter-request by counsel for clarification.  Even assuming that the letter to the court from plaintiff's attorney may be treated as a motion for summary judgment, we conclude that the letter was not supported by evidence in admissible form, and plaintiff would therefore have failed to meet his initial burden of proof (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562).  Our reference to the option in *Sullivan III* — where we stated that plaintiff is "entitled to monetary relief only in the event that defendant elects to exercise [the] option" (*id.* at 1060) — was made solely in the context of reviewing the amended complaint to determine whether plaintiff was entitled to a jury trial. The issue whether defendant had already exercised the option had not been raised on appeal and was not advanced before the motion court in the context of *Sullivan III*.

We note in conclusion that the issue whether defendant has exercised its option to purchase plaintiff's stock may be determined by the court in the event that defendant refuses to purchase the stock at the price set by the court following the trial on the value of the shares.

Entered:  March 15, 2013                          Frances E. Cafarell
                                                  Clerk of the Court